N/S/1
NO CV 71
NO CV 30

FILED ON DEMAND

FILED
CLERK, U.S. DISTRICT COURT

10/26/23

CENTRAL DISTRICT OF CALIFORNIA
BY: _____EEE____ DEPUTY

Kevin Lofton
868Victor Ave #14
Inglewood, CA, 90302
(310) 773-1296

## UNITED STATES DISTRICT COURT FOR

## THE CENTRAL DISTRICT OF CALIFORNIA

KEVIN LOFTON,                )   Case No.
                            )
         Plaintiff,          )   2:23-cv-09088-SVW-ASx
                            )
    vs.                      )
                            )
UNITED STATES OF AMERICA     )
                            )
         Defendant(s)        )

## <u>COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT</u>

1. This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §1331, §1346(b), §1402(b), §2401(b), and §§2671-2680, ("FTCA") by Kevin Lofton against the United States for civil penalties for (1) Conspiracy to commit  Theft, Trespass to Chattels,

Conversion, Intentional interference with prospective economic advantage, and Intentional infliction of emotional distress, (2) Deceit, (3) Theft, Trespass to Chattels, and Conversion,  (4) Intentional interference with prospective economic advantage, (5) Negligent interference with prospective economic advantage, (6) Intentional infliction of emotional distress, (7) Negligent infliction of emotional distress, and (8) for violations of Civil Code Section 52.1, the Tom Bane Civil Rights Act, for interfering by way of threats, intimidation, or coercion with the exercise or enjoyment of rights secured by the state or federal Constitutions.

2. On or about February 17, 2022 United States Department of Justice ( "DOJ" ) Assistant Attorney General Kenneth Polite participated in and initiated a review of misconduct of DOJ, and DOJ staff vis Plaintiff's personal and business bank account information including misconduct related to the conversion of Plaintiff's personal and business deposits on hand and arresting of SBA#3323639082 as well as address and take corrective actions regarding the absconding of Plaintiff's banking funds.

3. On or about February 17, 2022, DOJ Assistant Attorney General Kenneth Polite, with full knowledge that he was participating in and taking actions in furtherance of commission of tortious acts upon Plaintiff including the tortious acts of deceit, theft, conversion, trespass to chattels, intentional interference with prospective business advantage and intentional infliction of emotional suffering, Defendant with full knowledge of his actions, directed and or gave DOJ staff permission to continue DOJ staff misconduct and indicated that the DOJ Assistant Attorney General's office would neither take corrective action with respect to DOJ misconduct nor investigate or prosecute DOJ staff for misconduct related to the disclosures of and conversion of Plaintiff's personal and business banking information including deposits in Plaintiff's personal and business accounts, and also SBA#3323639082.

4. Pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), §1402(b), §2401(b), and §§2671-2680, Plaintiff served standard form 95 on Defendant on March 29, 2023 through certified mail.

5. Since on or about February 17, 2022 the DOJ Office of the General Counsel has been read into and had knowledge of Plaintiff's claims and

allegations and has since that time investigated and performed all due diligence to make proper lawful determinations for the DOJ with respect to Plaintiff's claims. Furthermore, Plaintiff alleges on information and belief that the DOJ Office of the General Counsel has long since determined and decided since on or about February 17 2022 in anticipation of claims to be filed by Plaintiff, and thereafter on or about March 29, 2023, after receiving such claims, that no further investigation or determination need be taken or performed or would be taken or performed by the DOJ in preparation of Plaintiff's expected filing of claims. Subsequently, Standard form 95 was received by the DOJ as verified by certified mail receipt, on March 29, 2023 and was constructively denied per the statutory provisions of the FTCA as of October 1, 2023.

## **JURISDICTION AND VENUE**

6. This Court has jurisdiction pursuant to 28 U.S. Code § 1346

7. Venue is proper pursuant to 28 U.S. Code § 1346 and §§§§§ 6226, 6228(a), 7426, 7428, and7429

## **PARTIES**

8. Plaintiff Kevin Lofton is a citizen and the business owner of Skip 2 My Loop Publishing (and including Giant Comix), which had an insured business value of $1,000,000 per Biberk Business Insurance Policy N9PL592338

9. Defendant is the UNITED STATES OF AMERICA (including the United States Department of Justice)

## STATUTORY BACKGROUND

10. **Fraud and Deceit** Actual Fraud is normally contractual in nature and is defined in the California Civil Code (CC) Section 1572. Deceit, which is not necessarily based on a contract, is described in CC 1709 and 1710. CC 1572 Actual fraud…consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true by one having knowledge or belief of the fact; 4. A promise made without any

intention of performing it; or, 5. Any other act fitted to deceive. CC 1709

11.  One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. CC 1710 specifies four kinds of deceit within the meaning of CC 1709: (a) Intentional misrepresentation which is "the suggestion, as a fact, of that which is not true, by one who does not believe it to be true;" (b) Negligent misrepresentation which is "the assertion, as a fact, of that which is not true by one who has no reasonable ground for believing it to be true" (c) Concealment, which is "the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact" and (d) False Promise which is "a promise made without any intention of performing it." Aside from the above statutes, the California courts have long held the following elements as essential to prove in fraud: a) misrepresentation; b) knowledge that the misrepresentation is false; c) intent to deceive; d) justifiable reliance by the victim; and e) resulting damages. The above criteria must all be met. Note that it is NOT necessary that

the wrongdoer benefited from the fraud. It is enough that the above criteria are met and the claimant was damaged.

12. **Claim for Treble Damages** The recent California Supreme Court ruling in Siry Investment, L.P. v. Farkhondehpour, 13 Cal. 5th 333 (2022), held that treble damages and attorneys' fees can be awarded pursuant to California Penal Code section 496(c) in theft-related business tort cases.

13. California Penal Code section 496(a) provides that anyone who knowingly receives stolen property may be criminally punished. "Every person who...receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" is subject to criminal punishment. To further deter theft and to allow victims a basis for relief against an offender, Penal Code section 496(c) also provides civil remedies for anyone who is harmed by a violation of Penal Code section 496(a)

14. **Claim for civil conspiracy**

The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act. ' The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. To prove a civil conspiracy a Plaintiff must prove:

- The defendant intentionally entered into an agreement with another person or persons to commit a tortious act.
- The defendant committed an overt act in furtherance of this agreement
- The overt act was committed in California.

15. **<u>Intentional interference with prospective economic advantage</u>** Under CACI No. 2202 The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition.

16.  Intentional interference with prospective economic advantage has five main elements: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the

probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

17. **Negligent interference with prospective economic advantage** A cause of action exists for negligent interference with another's prospective business advantage if the defendant acts unreasonably and wrongfully, albeit not intentionally, so as to foreseeably disrupt a business advantage of another with whom the defendant has a special relationship.

18. **Intentional infliction of emotional distress.** In California, if a person intends his or her conduct to cause an emotional, rather than a physical, <u>injury</u> to another individual, then he or she can be held liable for damages that occur as a result. Being the target of the intentional infliction of emotional distress can have severe consequences on a person's quality of life. To hold a person liable for

the intentional infliction of emotional distress requires a showing

that:

- The defendant's conduct was outrageous; and

- The defendant intended to cause emotional distress

19. **<u>Negligent infliction of emotional distress</u>** California law

allows a party to recover damages for the negligent infliction of

emotional distress. Under California law, emotional distress

damages can be claimed if a party was either

- a direct victim of someone's wrongful act, or
-  bystander that witnessed an injury to a close relative.

20. To recover for the negligent infliction of emotional distress, a

plaintiff must prove that

- The Defendant owed the Plaintiff a duty

- The Defendant negligently breached the duty, and

- The Plaintiff suffered severe emotional distress as a result of the

    negligence

21. Damages for a plaintiff's emotional distress can include both

economic- and non-economic damages such as:

- Medical bills,

- Bills for psychological counseling,
- Lost wages, and
- Pain and suffering, including loss of enjoyment of life

22. **Trespass to Chattels of business property and personal property** Under CACI No. 2101 the tort of Trespass to Chattels imposes liability for claims that a party wrongfully trespasses on the personal property of another party. To establish this claim, a plaintiff must prove all of the following:

  - That Plaintiff owned, possessed, or had a right to possess Plaintiff's personal property

  - That Defendant intentionally interfered with Plaintiff's use of or possession of Plaintiff's personal property or damaged the property

  - That Plaintiff did not consent to the interference or action of Defendant

  - That Plaintiff was harmed

  - That Defendant's conduct was a substantial factor in causing Plaintiff's harm.

23. **Conversion** Under CACI No. 2100 the tort of Conversion imposes liability for claims that a party wrongfully exercised control

over the personal property of another party. To establish this claim, a plaintiff must prove all of the following:

1. That Plaintiff owned, possessed, or had a right to possess Plaintiff's personal property

2. That Defendant substantially interfered with Plaintiff's personal property by knowingly or intentionally taking possession of Plaintiff's personal property or preventing Plaintiff from having access to Plaintiff's personal property or destroying the property or refusing to return Plaintiff's personal property after Plaintiff demanded its return

3. That Plaintiff did not consent to the interference or action of Defendant

4. That Plaintiff was harmed

5. That Defendant's conduct was a substantial factor in causing Plaintiff's harm.

24. **Civil Code Section 52.1, the Tom Bane Civil Rights Act**

Under Civil Code Section 52.1 a violation of Civil Code Section 52.1 provides protection from threats, intimidation, coercion and for attempts to interfere with someone's state or federal statutory or

constitutional rights. The rights include, but are not limited to, due process, equal protection, privacy, and the right of freedom from wrongful injury to personal relations. Damages allowed include medical expenses, impaired earning capacity, lost property value, pain, suffering, emotional distress, and loss of services.

25. 28 U.S.C. §1346(b), §1402(b), §2401(b), and §§2671-2680 provides a limited waiver of the United States' immunity from suit, allowing claims "for damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)

## CLAIM FOR CIVIL CONSPIRACY TO COMMIT TORTIOUS ACTS OF DECEIT, GRAND THEFT, TRESPASS TO CHATTELS, CONVERSION, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

26. On or about April 6, 2021 Plaintiff began reporting to United
States Department of Justice ("DOJ") officials including First Assistant
US Attorney for the Central District Stephanie Christensen, Assistant
US Attorney Christina Shay and (former) US Attorney for the Central
District Tracy Wilkison about significant false claims violations
committed by Plaintiff's former employer UCLA as was witnessed by
and or known by and or participated in by current UCLA employee and
former Assistant US Attorney Mark Krause, as well as UCLA Senior
Vice President and Chief Compliance and Audit Officer and ex Los
Angeles Police Department Inspector General Alexander Bustamante.
Plaintiff's report to DOJ regarded false claims violations arising out of a
wrongful termination action committed by Plaintiff's former employer
UCLA and retaliatory attempts made by UCLA staff, wherein UCLA
staff had improper and corrupt communications with a UCLA alumni
and current Employment Development Department ("EDD") judge to
create a public record undermining Plaintiff's credibility by
mischaracterization of being a 'disgruntled employee'. As a result of the
actions by UCLA and the EDD judge, Plaintiff was issued an EDD
judgment officially denying Plaintiff's right to EDD unemployment

claims yet paradoxically Plaintiff was issued the contested benefits, immediately after and in violation of the EDD ruling. Although Plaintiff appealed the ruling and believed he was deserving of his unemployment benefits, Plaintiff realized he was being issued the benefits in contravention of the EDD ruling in order to deny Plaintiff standing in any suit and to protect EDD from future liability. Nevertheless, Plaintiff reported the misallocation of government resources immediately to both EDD and to the DOJ and informed DOJ that while Plaintiff had contested the decision to deny the benefits, Plaintiff had reason to believe the benefits were being issued to him in order to rob him of standing in any future litigation against EDD. Rather than investigate Plaintiff's significant false claims allegations against UCLA which were clearly outlined in a document generated by Plaintiff entitled "UCLA violations", and instead of investigating the nature of Plaintiff being awarded benefits that EDD judges had officially ruled against providing, DOJ instead, in order to curry political favor in the state of California, began a months long campaign to warn UCLA and EDD about any possible liability or exposure from Plaintiff, and DOJ officials also began a months long campaign to use DOJ's vast powers

and influence to weaponize any information about Plaintiff that could be used against Plaintiff to retaliate against Plaintiff and undermine and or prevent and or intimidate Plaintiff from challenging Defendant's political friendships as well as any agents of the government (state or federal).

27. On or about September 15, 2021 US Attorney for the Central District staff and with the participation of (former) US Attorney for the Central District Tracy Wilkison, received and shared SBA#3323639082 and Plaintiff's personal tax and banking information with unauthorized local federal agents and agencies including local Federal Deposit Insurance Corporation ("FDIC") Office of the Inspector General Special Agent-in-Charge Jeffrey Pittano, local Director of Field Operations Office of the Internal Revenue Service ( "IRS" ) Criminal Investigations Ryan Korner, (former) United States Department of the Treasury ( "USDT") Office of the Inspector General Special Agent-in-Charge Rod Ammari, and unidentified staff members of the White House, not for a civil or criminal law enforcement purpose and not for any civil or criminal law enforcement investigative purpose, but for the purpose of (1) engaging in a purposeful conspiracy to commit tortious interference

and other tortious acts on Plaintiff by identifying ways to harm

Plaintiff's economic interests including, but not limited to fraudulently

deceiving Plaintiff with respect to promises Defendant made and or

caused to be made which were intended to induce Plaintiff and others to

rely to their detriment on these statements as set forth above, and (2)

converting and stealing Plaintiff's operating and personal finances.

28. Also on or about September 15, 2021, (former) US Attorney for

the Central District Tracy Wilkison, and other California based

personnel including the local Small Business Administration ("SBA")

and SBA Office of the Inspector General Special Agent-in-Charge

Weston King schemed to deceive Plaintiff and induce Plaintiff to

perform and commit business actions that Defendant knew were based

entirely on Defendant's promises, inducing serious and irreparable

harm and damage to his California business interests, creditors and

investors. Furthermore, from September 2021 – March 2022, Plaintiff's

SBA#3323639082 was frequently accessed by (former) US Attorney for

the Central District Tracy Wilkison, Assistant Attorney General

Kenneth Polite, local DOJ staff, local SBA staff and local non SBA staff,

including by local staff of FDIC Office of the Inspector General Special

Agent-in-Charge Jeffrey Pittano, local Director of Field Operations Office of IRS Criminal Investigations Ryan Korner, and USDT Office of Inspector General Special Agent-in-Charge Rod Ammari, and was discussed through emails, texts and phone messages by the same parties.

29. Although SBA#3323639082 was a document in federal form, Plaintiff alleges on information and belief, that the actions taken by Defendant was not a failure of the Small Business Administration to carry out federal statutory duties or otherwise follow federal law. On multiple occasions Plaintiff contacted the SBA about his claims vis SBA#3323639082. Plaintiff also contacted his congressperson. On multiple occasions both Plaintiff and his representative were informed by SBA officials that the issue was being reviewed and or escalated to proper management. It is on this information and belief that the SBA was generally doing everything in its power to carry out its statutory duties and follow federal law. It is Plaintiff's belief and understanding that several bad actors, including Defendant and including (former) US Attorney for the Central District Tracy Wilkison interceded extra legally, in violation of local and state laws with respect to conspiracy to

commit deceit to remove Plaintiff's SBA#3323639082 from normal

consideration for the purpose of harming Plaintiff in California and

injuring Plaintiff's California business interests.

30. Defendant, with the knowledge of and implicit permission of

Assistant Attorney General Kenneth Polite also, in contravention of

local law, participated in a scheme with other individuals to take or

steal or cause to be stolen more than $950 from Plaintiff's personal

bank account that originated from the issuance of California EDD

unemployment wages and California stimulus. Additionally, Defendant

also engaged in a conspiracy to take, steal or cause to be stolen all

monies (more than $950) from Plaintiff's business bank account as well.

Defendant engaged with others including staff of local FDIC Office of

the Inspector General Special Agent-in-Charge Jeffrey Pittano, local

Director of Field Operations Office of IRS Criminal Investigations Ryan

Korner, SBA Office of the Inspector General Special Agent-in-Charge

Weston King, and USDT Office of the Inspector General Special Agent-

in-Charge Rod Ammari to misrepresent to Plaintiff's personal banker

that there was a relevant local Paycheck Protection Program ("PPP")

loan investigation which required the bank to take unusual and

improper action against Plaintiff including acceding to the use of bank employees to debit Plaintiff's personal checking, and savings and business accounts for all monies existing therein.

31. United States agent DOJ played a unique role in this effort by orchestrating the plan to commit tortious actions on Plaintiff, by targeting Plaintiff and Plaintiff's business interests and by selecting, determining and identifying Plaintiff's assets for the purposes of wrongful conversion. Plaintiff also agreed to and or devised the scheme to carry out a civil conspiracy against Plaintiff under the false guise of a criminal tax investigation in order to make false representations to Plaintiff's local banker. Additionally DOJ Office of the Assistant Attorney General staff, at the direction of and with the knowledge of DOJ Assistant Attorney Kenneth Polite, accessed and shared Plaintiff's personal and business bank and tax records and history, in order to give the illusion to necessary entities including Bank of America and the Franchise Tax Board, that parties were conducting a local PPP criminal loan investigation, when in reality no such investigation was being performed or lawfully conducted.

32. Though Defendant helped construct and employed a clever cover story of a PPP loan investigation and state tax recovery action, in reality no such investigation was taking place and no such tax recovery action was sanctioned by any court or law. Additionally, Defendant either knew or should have known that the monies Defendant caused to be withdrawn came, at least partially or primarily, from the state of California and California agencies for the express purpose of aiding Plaintiff as authorized by the Governor of California and California legislature. These funds were both earned by Plaintiff (unemployment compensation) and directed to Plaintiff by state statute and law and the absconding of these funds was a violation of the laws of this state. Defendants' conspiracy to abscond these funds as well as the conspiracy of deceit with respect to intentionally causing Plaintiff to alter his risk and injury profile with respect to his business interests as he reasonably depended on the representation of Defendant's agents and otherwise uninformed co-conspirators, constitute acts that Defendant, if it were a private citizen, would be liable under the laws of the state of California.

33. Plaintiff aims to demonstrate that SBA#3323639082 and Plaintiff's banking information was accessed numerous times by numerous individuals and unauthorized individuals between September 2021 and May 5 2022, including DOJ staff, at the direction of and with the knowledge of Assistant Attorney General Kenneth Polite. The manner in which SBA#3323639082 was improperly shopped around to government agencies, the manner in which Plaintiff's personal and business banking information was accessed and used by Defendant an others, and the numerous communications, both informal and formal, through texts, and emails, from DOJ officers including Assistant Attorney General Kenneth Polite, form the basis of documentary proof that Defendant agreed to a civil conspiracy to commit several tortious acts, and Defendant intended to commit actions in furtherance of committing these tortious acts.

34. Plaintiff also aims to prove and demonstrate that as a result of the misdeeds, tortious acts, and false promises of Defendant, and theft of money belonging to Plaintiff that Plaintiff was relying on to pay his rent and monthly expenses, Plaintiff's business fell into an economic spiral that was irreparably harmed, causing the total loss of Plaintiff's

business, Skip 2 My Loop Publishing.  Furthermore, Plaintiff aims to prove and demonstrate that Defendant entered into a civil conspiracy to cause intentional harm to Plaintiff's business interests, that Defendant took actions in furtherance of an agreement to commit tortious acts and that Plaintiff suffered economic loss, pain and suffering as a proximate result of those tortious actions.

## CLAIM FOR FRAUDULENT DECEIT

35. Plaintiff incorporates herein by reference each and every allegation contained above as if set forth in full herein.

36. The United States Department of Justice (DOJ), is a federal executive department of the United States government tasked with the enforcement of federal law and administration of justice in the United States. The duties of the DOJ include representing the US government in legal matters including criminal investigations.

37. On or about March 27, 2020, Congress passed the Coronavirus Aid Relief and Economic Security Act (CARES Act) to provide economic relief to businesses that were suffering financially from the Covid 19 pandemic. The CARES Act was effectively an offering of a contract by

the government to business owners, such as Plaintiff. The terms of the

contract were clear: in exchange for government loans/ funding,

businesses who might otherwise shutter would remain open and

continue to pay their employees.

38. On or about September 13, 2021 Plaintiff applied for CARES

funding with the intent of honoring the contractual obligation inherent

in the funding. On or about November 10, 2021, Defendant, the United

States, tentatively agreed to Plaintiff's request/ contract

(SBA#3323639082 ) application by tending to Plaintiff partial payment

in the amount of $15,000. With this partial payment, and on the basis of

Defendant's promises and claims, Plaintiff averted shuttering his

business interests in a rational and deliberate manner, and thereby

overextended himself and his business interests while waiting for final

funding from the Defendant which Plaintiff had a reasonable basis to

believe or expect. Plaintiff was unaware however that Defendant's

partial payment was the result of an intentional deception, a scheme

hatched by and with the participation of staff of the FDIC, USDT, SBA,

and IRS, with the knowledge of and tacit approval of Assistant Attorney

General Kenneth Polite on Plaintiff.  Defendant, in an attempt to harm

Plaintiff and bring maximum financial loss to Plaintiff, intentionally and willfully deceived Plaintiff thereafter with multiple false promises that his business funding was being considered fairly and would be finalized imminently. On several documented occasions Plaintiff was purposefully and deliberately deceived by Defendant into performing on the CARES Act contract when Defendant knew full well that it was never going to honor its end of the contract.

39. From, on or abouts September 13, 2021 to July 5, 2022 Defendant the United States, and through its agent the Department of Justice, specifically in the person of (former) US Attorney for the Central District Tracy Wilkison, with the knowledge of tacit approval of Assistant Attorney General Kenneth Polite, orchestrated and directed United States agents including the Small Business Administration ("SBA") and SBA Office of the Inspector General Special Agent-in-Charge Weston King to actively deceive Plaintiff regarding the processing, review and examination of Plaintiff's business loan applications including SBA#3323639082.

40. Over the course of a period of 8 months, Defendant the United States and through its agents or employees including the United States

Department of Justice and others identified above made and/ or caused to be made the misstatements and affirmative misrepresentations of fact set forth herein, and also concealed and withheld material information from Plaintiff for the purpose of inducing Plaintiff and others to rely to their detriment on these statements as set forth above. Those misrepresentations, included, without limitation the following statements and omissions to Plaintiff:

- That Plaintiff's SBA#3323639082 was going to be processed to final resolution,

- That Plaintiff's SBA#3323639082 was escalated to the director level for final resolution

- That Plaintiff would receive expedited review and final processing of SBA#3323639082 in order that Plaintiff could perform his obligations to perform properly ( Defendant was informed by Plaintiff on multiple occasions, and Defendant either knew or should have known the Plaintiff was depending on the promises of the Defendant and without those promises Plaintiff' would need to unwind his business properly and in an orderly fashion, if necessary, without jeopardizing existing business relationships with creditors and investors )

- That Plaintiff would be assigned a loan officer to finalize Plaintiff's loan funding

41. At the time of making these misrepresentations and/or omissions, Defendant knew that said statements were false or failed to disclose such material information with the intent to deceive Plaintiff or do damage to Plaintiff, so that Plaintiff and others would act in reliance thereon. The United States and DOJ's intent to defraud and deceive was manifested in (1) the United States continued misrepresentations regarding payment of a small business loan vital to Plaintiff as well as in false promises to process Plaintiff's application for approved business funding, (2) the United States continued misrepresentations about investigation of Plaintiff's complaints, and (3) the United States making disparaging harmful, and destructive remarks to Plaintiff's business relationships including disparaging remarks Defendant communicated directly to Plaintiff's personal banker.

42. Plaintiff did act in reasonable reliance on these statements and performed all the covenants and conditions required of him by the agreements alleged above as well as all work he was asked to or required to perform based on such statements and omissions. Plaintiff

is informed and believes that various third parties acting in reliance on misrepresentations from Defendant removed Plaintiff from consideration for vital business funding and chose to permanently terminate all future business dealings with Plaintiff, including all future investing opportunities.

43. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Plaintiff has suffered damages in the form of irreparable harm and ultimate dissolution of his business Skip 2 My Loop Publishing, at a loss in the amount of the business's insured value of $1,000,000.

44. Defendants engaged in the foregoing conduct in California to affect the California based business relationships of Plaintiff, who himself is a resident of California. Even respect to harmful deception which touched upon SBA#3323639082, Defendant, through agents operating in California, took steps to intervene through deception on the business affairs of Plaintiff in California to impact and negatively affect Plaintiff's California based business affairs. Defendants engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others,

thereby entitling Plaintiff to an award of compensatory and punitive damages in an amount to be determined at trial but in all cases not less than of $1,495,000.

## TREBLE CLAIMS FOR THEFT, TRESPASS TO CHATTELS AND CONVERSION

45. Plaintiff incorporates herein by reference each and every allegation contained above as if set forth in full herein.

46. On or about October 15, 2021, Plaintiff was the sole owner of various personal property including (1.) personal funds existing in Plaintiff's bank accounts, (2.) business funds existing in Plaintiff's business bank accounts, (3.) SBA#3323639082, and (4.) DLSE complaint "Slander", DLSE complaint "Wrongful Termination", and DLSE complaint "Wage Dispute". On or about October 15, 2021, ( former ) US Attorney for the Central District Tracy Wilkison participated in discussions with various federal agents and agencies including FDIC Office of the Inspector General Special Agent-in-Charge Jeffrey Pittano, Director of Field Operations Office of IRS Criminal Investigations Ryan Korner, SBA Office of the Inspector General Special Agent-in-Charge

Weston King, to extend retaliatory and intimidation efforts against
Plaintiff to include targeting Plaintiff's personal banking account and
banking relationships by contacting Plaintiff's banker, Bank of
America, in the guise of conducting a PPP loan investigation.

47.    On October 28, 2021, with the approval of and at the explicit
direction of ( former ) US Attorney for the Central District Tracy
Wilkison and various federal agencies, as conceived and communicated
in emails, texts, and phone calls between, SBA Office of the Inspector
General Special Agent-in-Charge Weston King, Director of Field
Operations Office of IRS Criminal Investigations Ryan Korner, FDIC
Office of the Inspector  General  Special Agent-in-Charge Jeffrey
Pittano, and US Treasury Office of Inspector General Special Agent-in-
Charge Rod Ammari, at said direction, Bank of America acted to zero
out Plaintiff's personal bank account and business account of all funds,
including disaster relief funds allocated by order of the governor of
California, and funds designated to pay Plaintiff's business expenses
and business insurance, and Plaintiff's living and rent expenses, and
thereby remit those funds on instruction from agents of and including
Assistant Attorney General Kenneth Polite to a third-party entity

affiliate of the federal government. Plaintiff's funds were remitted under the false guise of tax collection. Parties' participation in the absconding of Plaintiff's personal and business funds robbed Plaintiff of the ability to pay needed expenses including rent, utilities and business insurance and was done solely for the purpose of devastating Plaintiff financially.

48. In addition to substantially interfering with Plaintiff's personal and business funds, and SBA#3323639082, Defendant knew of the existence of Plaintiff's personal property and Defendant knew of the harm that would result to Plaintiff if this personal property was interfered with. With this knowledge, Defendant intentionally and wrongfully interfered with Plaintiff's personal property to a substantial degree, and exercised control over Plaintiff's property such that Plaintiff was prevented from accessing personal property including personal funds in Plaintiff's bank accounts, business funds in Plaintiff's business account, and SBA#3323639082. Even after Plaintiff demanded return of his personal property, Assistant Attorney General Kenneth Polite refused.

49. As a proximate result of the DOJ's conduct, including the conduct of Assistant Attorney General Kenneth Polite the facts alleged herein, Plaintiff has suffered compensatory and punitive damages in an amount to be determined at trial but in all cases not less than $1,495,000.

## CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

50. Plaintiff incorporates herein by reference each and every allegation contained above as if set forth in full herein.

51. Defendant knew of the existence of business relationships between Plaintiff and his customers and third parties including his bank, and intentionally and/or wrongfully interfered with said relationships so as to disrupt or terminate said relationships and cause damage to the Plaintiff's economic interests.

52. Said wrongful conduct resulted in the deterioration of the relationships between Plaintiff and certain customers and third parties, and the economic relationship was actually interfered with and disrupted and terminated. As a result of Defendant and its agents the DOJ's actions, Plaintiff's relationship with his banker was violated an

jeopardized to the point that Plaintiff has been viewed as suspect by his banker and denied all applications for business loans or future lines of credit. Plaintiff also, lost the benefit of financial relationships with his previous creditors and investors because Plaintiff was compromised into a position of taking on more adverse risk on the basis of promises that Plaintiff's business would receive funding to remain a going concern. Had Plaintiff not been so deceived or interfered with, Plaintiff could have provided for an orderly unwinding of his business interests so as to preserve his assets and intellectual property and not over extend himself with his creditors or investors. As a direct result of the promises made by the Defendant and the conspiracy to deceive and steal from Plaintiff, Plaintiff's business relationships were ruined and Plaintiff's creditors and investors and personal banker now no longer trust him or believe he is a sufficient credit or investment risk.

53. As a proximate result of Defendant's conduct and the facts alleged herein, Plaintiff has suffered damages in an amount of to be determined at trial.

54.  The foregoing conduct engaged in by Defendant, and each of its managing agents, constitutes malice, fraud and oppression and was

carried out with a conscious and willful disregard of Plaintiff's rights, so as to entitle Plaintiff to compensatory damages.

## **CLAIM FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

55. Plaintiff incorporates herein by reference each and every allegation contained above as if set forth in full herein.

56. Defendants' conduct toward Plaintiff, as alleged above, was outrageous and unprivileged and was done either with the intent to harm the relationships between Plaintiff and his customers and third parties, including creditors, investors and Plaintiff's banker; and/or wrongfully interfered with said relationships so as to disrupt or terminate said relationships and cause damage to Plaintiff's economic interests.

57. Said wrongful conduct resulted in the deterioration of the relationships between Plaintiff and certain customers, creditors, investors and third parties, and the economic relationships were actually interfered with and disrupted and terminated.

58. As a proximate result of Defendant's conduct and the facts
alleged herein, Plaintiff has suffered damages in an amount to be
determined at trial.

59.  The foregoing conduct engaged in by Defendant, and each of its
managing agents, constitutes negligence and recklessness and was
carried out with a conscious and willful disregard for reasonable care of
Plaintiff's rights, so as to entitle Plaintiff to compensatory damages
from Defendant.

## CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiff incorporates herein by reference each and every
allegation contained above as if set forth in full herein

61. On February 17, 2022 Assistant Attorney General Kenneth Polite
personally received a request from Plaintiff to review misconduct of
DOJ Office of the Assistant Attorney General staff vis SBA#3323639082
as well as address and take corrective actions regarding the absconding
of Plaintiff's banking funds.

62. On or about February 17, 2022, Assistant Attorney General
Kenneth Polite directed and or gave DOJ Office of the Assistant

Attorney General staff as well as other United States agents permission to continue California DOJ staff misconduct.

63. By participating in and engaging in a purposeful scheme to harm Plaintiff through intentional deception, and by engaging in and participating in a concerted effort to deprive Plaintiff of Plaintiff's ability to pay living expenses, Defendants' conduct, including the conduct of Assistant Attorney General Kenneth Polite, toward Plaintiff, as alleged above, was outrageous and unprivileged and was done either with the intent to cause emotional distress or with reckless disregard of the probability of causing such emotional distress.

64. As a direct and proximate result of Defendants' outrageous and unprivileged conduct, as alleged above, Plaintiff has suffered substantial injury and damages to his person and will continue to so suffer in the future.  Such damages include extreme humiliation, embarrassment, depression, emotional pain, emotional distress, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses from the date of said acts until now, and will continue to so suffer in the future, all in an amount of $495,000.

65. Moreover, Plaintiff has suffered physical manifestation of his severe emotional distress, including loss of sleep and loss of appetite, anxiety and depression.

## CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66. Plaintiff incorporates herein by reference as though fully set forth in this paragraph each and every allegation contained in the paragraphs above.

67. Along with the solemn and awesome powers bestowed upon the government by its citizens, the Defendant, including Assistant Attorney General Kenneth Polite, owed a duty to Plaintiff as enumerated in the Constitution of the United States and the Bill of Rights. This duty is further articulated and affirmed and sworn to by Defendant, including Assistant Attorney General Kenneth Polite, upon the commission of official duties and actions by Defendant, including the commission of official duties by Assistant Attorney General Kenneth Polite, and confirms Defendant's promise to 'preserve and protect the Constitution of the United States'.

68. Defendant, including Assistant Attorney General Kenneth Polite, also had specific duties as articulated by writ of law, provision and policy, to protect Plaintiff's privacy with respect to Plaintiff's sensitive banking information that was in Defendant's possession. Additionally, Defendant, as a federal power and agent, also had a duty to Plaintiff to act in good faith and not with intentional deception. Lastly, Defendant also by writ of law, statute, provision, law and federal policy had a duty to Plaintiff to treat Plaintiff fairly and equally, without discrimination.

69. Plaintiff, alleges as alleged herein, that Defendant's wrongful actions either intentionally or negligently breached the duties Defendant owed to Plaintiff and Plaintiff was adversely harmed as a direct proximate result of Defendant's wrongful and negligent conduct.

70. Plaintiff was a direct victim of Defendant's wrongful and negligent conduct. Defendants' conduct toward Plaintiff, as alleged above, was wrongful and or negligent and as direct result, Plaintiff suffered extreme emotional distress.

71. As a direct and proximate result of Defendants' wrongful and negligent conduct, as alleged above, Plaintiff has suffered substantial injury and damages to his person and will continue to so suffer in the

future.  Such damages include extreme humiliation, embarrassment, depression, emotional pain, emotional distress, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses from the date of said acts until now, and will continue to so suffer in the future, all in an amount of $495,000.

72. Moreover, Plaintiff has suffered physical manifestation of his severe emotional distress, including loss of sleep and sleep and loss of appetite, anxiety and depression.

73. The above-stated actions of Defendants, and each of them, was done with reckless disregard of Plaintiff's rights.  As a result of these and other actions, Plaintiff is entitled to an award of damages.

## CLAIM FOR VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT

74. Plaintiff incorporates herein by reference as though fully set forth in this paragraph each and every allegation contained in the paragraphs above.

75. Defendants' conduct toward Plaintiff, as alleged above, was outrageous and unprivileged and was done either with the intent to

violate Civil Code Section 52.1, the Tom Bane Civil Rights Act, or with reckless disregard of the probability of causing such a violation.

76. As a direct and proximate result of Defendants' outrageous and unprivileged conduct, as alleged above, Plaintiff has suffered from the infringement of rights secured to him by the federal and state constitutions including, but not limited to, the rights of:

    a. Due process – the Due Process Clause of the Fifth and Fourteenth Amendments describes a legal obligation to all states, the central promise being an assurance that all levels of government must operate within the law ("legality") and provide fair procedures. Plaintiff aims to demonstrate that Defendant violated Plaintiff's right of due process with respect to Defendant's participation in the arresting of SBA#332363908, SBA FOIA request SBA-2022-007643, DOJ FOIA request #454521, FDIC FOIA request #2022-FDIC-FOIA-00298, IRS TLS FOIA #2023-00115 request, and in the illegal conversion of Plaintiff's personal and business funds. Additionally, Plaintiff also asserts that on or about September 15, 2021, Defendant Assistant Attorney General

Kenneth Polite, in concert with agents of the FDIC, IRS,
SBA, and USDT, also acted to interfere with Plaintiff's right
of due process by directing and authorizing communication
by representatives of the government to Division of Labor
Standards and Enforcement Deputy Labor Commissioner
LaKesha Edwards, specifically requesting that Deputy Labor
Commissioner Edwards refrain from investigating or
processing Plaintiff's DLSE complaints against Plaintiff's
former employer (UCLA/ Corporate Financial Services).

b.  Equal protection - Defendant Assistant Attorney General
Kenneth Polite violated Plaintiff's right to equal protection
under the law when Defendant discriminated against
SBA#3323639082, and when Defendant took actions to
retaliate against and intimidate Plaintiff.

c.  Privacy - Defendant Assistant Attorney General Kenneth
Polite violated Plaintiff's right to privacy in the receipt and
dissemination of Plaintiff's personal information specifically
SBA#3323639082, and Plaintiff's banking and tax
information.

d. Freedom from wrongful injury to personal relations - Defendant Assistant Attorney General Kenneth Polite committed wrongful injury to Plaintiff's personal and business relations by misrepresenting to Plaintiff's personal banker that Plaintiff was under an investigation warranting the unlawful withdrawal of Plaintiff's personal and business funds while threatening to irreparably damage Plaintiff's relationship to his banker. As a result of Defendant's misrepresentations, Plaintiff's bank altered Plaintiff's risk profile and denied him lines of credit although Plaintiff has had an above average credit score and earns a regular and substantial income.

77. As a direct and proximate result of Defendants' outrageous and unprivileged conduct, as alleged above, Plaintiff has suffered substantial injury and damages to his person and will continue to so suffer in the future.  Such damages include the denial of due process of Plaintiff's federal and state applications for relief. Damages also include extreme humiliation, embarrassment, depression, emotional pain,

emotional distress, suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses from the date of said acts until now, and will continue to so suffer in the future, all in an amount to be determined at trial, but in all cases, not less than $1,495,000.

78. Moreover, Plaintiff has suffered physical manifestation of his severe emotional distress, including loss of sleep and sleep and loss of appetite, anxiety and depression.

79. The above-stated actions of Defendants, and each of them, was done with malice, fraud, or oppression, and reckless disregard of Plaintiff's rights.  As a result of these and other actions, Plaintiff is entitled to an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kevin Lofton prays that this Court issue a decision and order:

1.) Assessing a civil penalty of $1,000,000 for loss of Plaintiff's going concern Skip 2 My Loop Publishing Inc,, plus $195,000 for the taking and impairment of SBA#3323639082  plus $195,000 for actual damages relating to intentional and negligent interference with prospective economic advantage plus $2,500 for actual damages related to the taking of personal funds from Plaintiff's personal bank account and business bank account, and plus $102,500 for the intentional and negligent infliction of emotional distress for a total sum of damages of $1,495,000.

2.) Assessing treble damages

3.) Granting Plaintiff such further relief as the Court deems just and proper.


Dated: October 20, 2023                        Respectfully submitted,

                                               By,

                                               *[s] Kevin Lofton*

Kevin Lofton
868 Victor Ave #14
Inglewood, CA, 90302
(310) 773-1296

Acting Pro Per

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Kevin Lofton | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| U.S. Department of Justice | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  David Harris

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within   30   days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:    10/20/2023

[s] Kevin Lofton
*Signature of the attorney or unrepresented party*

Kevin Lofton
*Printed name*
868 Victor Ave #14
Inglewood,CA 90302

*Address*

kevinmichaellofton@gmail.com
*E-mail address*

(310) 773-1296
*Telephone number*